■ BIANCHI INDUSTRIAL SERVICES, LLC, Respondent, v VILLAGE OF MALONE, Appellant. [838 NYS2d 240]—

Lahtinen, J. Appeal from an order of the Supreme Court (Demarest, J.), entered April 21, 2006 in Franklin County, which denied defendant's motion for, inter alia, summary judgment dismissing the complaint.

Plaintiff was the low bidder and entered into a contract in August 2003 with defendant to demolish and remove the abandoned and deteriorating Flanagan Hotel, which had been condemned by defendant's code enforcement officer. The hotel's owner, with court proceedings looming, had contractually authorized defendant to take any steps necessary to address the public health problems caused by the hotel, including demolition. Defendant, among other things, commenced foreclosure proceedings, requested permission from the State Historic Preservation Office (hereinafter SHPO) to demolish the entire structure and sought grants to cover much of the costs from the United States Department of Housing and Urban Development (hereinafter HUD). Briefly stated, prior to the bidding process, defendant was informed by SHPO that only the top three floors of the six-story structure could be demolished—the bottom three floors apparently perceived as having historical importance— and HUD notified defendant that its grants were contingent upon, among other things, compliance with "historic preservation requirements." Nevertheless, ostensibly confident that these issues could be resolved in favor of total removal of the building, defendant placed the complete demolition job to bid without written reference to any potential limitations; plaintiff's bid of $459,000 was accepted.

Plaintiff commenced work on the project in September 2003, erecting a chainlink fence around the property, installing electrical service at the site, putting equipment in place and obtaining necessary permits. In October 2003, however, SHPO notified defendant of its continued refusal to authorize complete destruction of the hotel. On October 28, 2003, defendant sent plaintiff a letter noting that SHPO had "recently indicated that they have some concerns about the demolition of the Flanagan Hotel," directing plaintiff to "refrain from any further startup or demolition activities," but sanguinely stating that it believed it could "alleviate [SHPO's] concerns fairly quickly." Defendant enclosed a check to plaintiff for $68,850 in payment of services through mid-October. In January 2004, HUD denied release of funds for the project until various conditions were met, including written clearance from SHPO, which was not forthcoming. Plaintiff sent written inquiries regarding the status of the now dormant project to defendant in May 2004 and August 2004. It demanded in an October 2004 letter to be allowed to immediately resume work or be notified that the contract was being terminated by defendant and, if so, be given a response regarding damages for improper termination. By letter of January 25, 2005, defendant's counsel notified plaintiff that the contract was void, the prior $68,850 payment was unauthorized

and should be repaid, and that no other charges for which plaintiff sought compensation would be paid.

Plaintiff served a notice of claim on March 3, 2005, an amended notice of claim on March 22, 2005, and commenced this action on June 6, 2005, alleging breach of contract and fraudulent misrepresentation. After answering and asserting a counterclaim, defendant made a predisclosure motion to dismiss arguing that the contract was void as violative of Village Law § 5-520, there was no factual basis for the fraudulent misrepresentation claim, and the action was barred because both the notice of claim and complaint were untimely. Defendant further sought summary judgment directing plaintiff to return the $68,850 payment. Supreme Court, finding factual issues and noting the early procedural posture of the lawsuit, denied all relief sought by defendant in a detailed written decision. Defendant appeals.

We affirm. Municipal contracts that violate clear statutory provisions are not enforceable (*see Granada Bldgs. v City of Kingston*, 58 NY2d 705, 708 [1982]; *Town of Oneonta v City of Oneonta*, 191 AD2d 891, 891-892 [1993]; *McKee v City of Cohoes Bd. of Educ.*, 99 AD2d 923, 925 [1984]), and Village Law § 5-520 (2) prohibits a village from entering into a contract "unless an amount has been appropriated for the particular purpose and is available therefor or has been authorized to be borrowed pursuant to the local finance law." On this limited record, however, it is not entirely clear that the contract violated Village Law § 5-520 since it is not fully established what funds were available for this highly publicized project, which had produced two rounds of bidding and had purportedly received assistance regarding financing by various state and federal elected representatives. There are documents and representations set forth in the record which reflect that some funding may have been available notwithstanding the problems with SHPO and HUD. Plaintiff should be afforded an opportunity to develop the record through disclosure. Moreover, viewing the evidence in the light most favorable to the nonmovant and noting the early procedural posture of this case, we agree with Supreme Court that, even if defendant had established the contract ran afoul of Village Law § 5-520 (2), plaintiff set forth adequate proof to avoid summary dismissal since further disclosure is necessary to determine whether it would nevertheless be entitled to some compensation under the narrow exception to the general rule (*see Vrooman v Village of Middleville*, 91 AD2d 833, 834 [1982], *lv denied* 58 NY2d 610 [1983]; *see also Nassau County v Incorporated Vil. of Roslyn*, 218 AD2d 688, 689-690 [1995]; *Suf-*

*folk County Water Auth. v Board of Fire Commrs., Centerport Fire Dist.*, 89 AD2d 849, 849 [1982], *affd* 59 NY2d 646 [1983]).

Similarly, defendant did not establish that the cause of action alleging fraud must be dismissed. Plaintiff alleges that defendant withheld or misrepresented key facts upon which it relied when bidding, including the restrictions on the demolition by SHPO and the relationship of those restrictions to the funding by HUD. Indeed, there is proof in the record indicating that officials of defendant represented that both the funding and approval to completely remove the hotel were fully in place prior to any bidding by plaintiff. Whether defendant misrepresented these facts and, if so, whether such misrepresentation was fraudulent (and actionable) or merely negligent (and nonactionable) (*see H & R Project Assoc. v City of Syracuse*, 289 AD2d 967, 969 [2001]) present factual issues that cannot be decided within the context of defendant's current motion.

Finally, we find unavailing defendant's contention that plaintiff's action is time-barred. A notice of claim asserting an action against a village based upon a contract must be filed within one year of accrual and the action must be commenced within 18 months of accrual (*see* CPLR 9802; *see generally Salesian Socy. v Village of Ellenville*, 41 NY2d 521, 523 n 1 [1977]; *Ayvee Constr. Co. v Village of New Paltz*, 78 AD2d 942, 942 [1980]). This action did not, as urged by defendant, accrue when the mayor wrote a letter to plaintiff dated October 28, 2003. That letter did not include any language that could be reasonably construed as indicating that the contract was being terminated or materially breached, and it is apparent that defendant believed the cessation of work requested therein would be of short duration. We agree with Supreme Court that accrual did not occur until, at the earliest, October 11, 2004, when defendant failed to meet plaintiff's deadline for instructions to proceed.* Therefore, plaintiff's notices of claim (filed March 3, 2005 and March 22, 2005) and its summons and complaint (filed June 6, 2005) were timely. The remaining issue is academic.

Cardona, P.J., Mercure, Peters and Rose, JJ., concur. Ordered that the order is affirmed, with costs.

---

* Without further development of the record, it is not clear whether accrual occurred on October 11, 2004 or some date thereafter. Negotiations were apparently ongoing from that date until defendant's letter of January 25, 2005, in which it claimed that the contract was void and demanded return of previously paid funds. Ascertaining a precise date of accrual between October 11, 2004 and January 25, 2005 is unnecessary since the action is timely even under the earlier date.